## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ARI BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-0716 (RJL) |
| | ) | |
| BUREAU OF PRISONS, *et al.*, | ) | **FILED** |
| | ) | |
| | ) | **SEP 2 8 2015** |
| Defendants. | ) | |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### MEMORANDUM OPINION
(September **28**, 2015) [Dkts. #16, #20]

Plaintiff Ari Bailey ("plaintiff") brings this action *pro se* against the Bureau of

Prisons ("BOP") and twelve named BOP employees[1] (collectively, "defendants") for

alleged violations of his rights under the First Amendment, the Supremacy Clause, the

Privacy Act, and various civil rights statutes. *See* Compl. [Dkt. #1]. Presently before the

Court is Defendants' Motion to Dismiss or, Alternatively, to Transfer. *See* Defs.' Mot. to

Dismiss ("Defs.' Mot.") [Dkt. #16]; Mem. in Support of Defs.' Mot. to Dismiss, or

Alternatively, to Transfer ("Defs.' Mem.") [Dkt. #16]. Upon consideration of the

pleadings, the relevant law, and the record herein, the Court GRANTS in part defendants'

Motion to Dismiss.[2]

---

[1] Only the case caption in plaintiff's Complaint names the Bureau of Prisons as a defendant in this action. The body of the Complaint lists the following BOP officials as defendants: Jose Santana, Ike Eichenlaub, Robert Farley, Michael Smith, Kevin Toney, James Link, John Stumbo, David Root, "Synder," "M. Parr," Timothy Fazenbaker, and R.D. Sloan.

[2] Plaintiff's request for discovery under Rule 56(f), *see generally* Pl.'s Mem. of P. & A. for Continuance for Discovery and/or in the Alternative Denial of Defs.' Premature Mot. to Dismiss/Summ. J. Pursuant to Fed. R. Civ. P. 56(f) [Dkt. #20], is DENIED.

## BACKGROUND

Because the instant case arises on a motion to dismiss, the Court's factual analysis

centers upon those facts alleged in the Complaint, the documents attached thereto, and

matters of which the Court may take judicial notice. *See EEOC v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). As required by governing

precedent, the Court will "accept as true all of the factual allegations contained in the

complaint." *See Swierkiewicz v. Sorema*, 534 U.S. 506, 508 n.1 (2002). Viewed through

this lens, the facts here are as follows:

On October 20, 1994, plaintiff was sentenced to a 540-month term of

imprisonment and was thereafter incarcerated at the United States Penitentiary, Big

Sandy ("Big Sandy"). In or around 2012, the BOP concluded, based on an internal

investigation conducted by the BOP's Central Office Intelligence Section and the

Sacramento Intelligence Unit ("SIU") that plaintiff should be classified as a "public

security factor" ("PSF") based on his purported ties to the Black Guerrilla Family

("BGF"), a prison gang that the BOP considers to be a "disruptive group." [3] *See* Compl.

¶ 39; Defs.' Mem. at 4. As a result of this reclassification, the BOP transferred plaintiff

---

[3] According to defendants, the BOP began investigating plaintiff for ties to the BGF in 2004, after he appeared in a photograph with known members of the BGF. *See* Decl. of Kevin Schwinn ("Schwinn Decl.") Attach. 2 [Dkt. #16-1]. Defendants represent that these investigations proved fruitful, as the BOP intercepted a communication that purportedly demonstrates plaintiff's membership in the BGF. However, citing security concerns, defendants have not shared this communication with the Court. *See* Defs.' Mem. at 3. Defendants further state that on May 19, 2009, a BOP Hearing Administrator found that plaintiff had participated in a riot involving a "large number of inmates from two separate gangs," once again igniting suspicions that he was a member of the BGF. *See* Schwinn Decl. Attach. 7 [Dkt. #16-1]. During the course of its investigation, Big Sandy personnel notified both the BOP Central Office's Intelligence Section, and the SIU of its findings. *See* Defs.' Mem. at 4. According to defendants, an October 18, 2011 memorandum, which defendants have once again withheld for security reasons, confirmed that plaintiff was indeed a BGF member. *Id.*

to a facility capable of handling high security inmates—the United States Penitentiary in Lewisburg, Pennsylvania. *See* Compl. ¶¶ 39-40, 64.

Plaintiff, to say the least, was not amenable to this transfer. In 2014, plaintiff commenced the instant suit, claiming that his reclassification was based on "intrinsically erroneous, false, stale, outdated [and] inaccurate records information" in violation of the Privacy Act. *See* Compl. ¶ 19. According to plaintiff, defendants fabricated his membership in the BGF in a "willfull [sic] collaboration to oppress, threaten, or intimidate plaintiff" as retribution for the various inmate grievances he has lodged during his confinement. *See* Compl. ¶ 52. As evidence of this proposition, plaintiff states that he confronted one of the named defendants, Big Sandy Unit Manager Timothy Fazenbaker, about his grievances and was told by defendant Fazenbaker: "we have to do some creative writing to get your transfer approved." Compl. ¶ 50. Plaintiff alleges that his reclassification and ensuing transfer has had several adverse effects, including:

> 1.) Permanent disqualification from medium custody and minimum custody placement within the B.O.P., (2.) forced compliance with monthly urinanalysis [sic] test[s] irregardless [sic] of negative results . . . , (3.) permanent disqualification from general population at all BOP federal transit center facilities, (4.) permanent high-heightened security placement and transfers, (5.) Permanent reclassification as "criminal street gang-disruptive group" . . . (6.) "surprise transfer" to ADX-MAX or special management unit (SMU), (7.) reclassification for max two-hour watch custody, without any [disciplinary hearing officer] finding, incident report or hearing [and] (8.) punitive confinement in segregation for 12 months . . . .

*Id.* ¶ 64. Invoking numerous statutory and constitutional laws, plaintiff's Complaint alleges four discrete causes of action: retaliation in violation of the First Amendment of

3

the Constitution (Count I); Violation of the Privacy Act of 1974 (Count II); Denial of his

Civil Rights in violation of 18 U.S.C. §§ 241 and 242 (Count III); and violation of his

rights under the Supremacy Clause of the Constitution (Count IV).  Compl. at 12-13.

Plaintiff demands declaratory relief, monetary damages, and expungement of all

references to his membership in a Disruptive Group from records maintained by the BOP,

the U.S. Department of Justice, and the state of California.  *See* Compl. at 13.

Defendants moved, in response, to dismiss the complaint in its entirety.  *See* Defs.' Mot.

For the reasons discussed below, the Court will grant in part defendants' Motion.

## STANDARD OF REVIEW

Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6)[4].  Rule 12(b)(1) permits a party to challenge the

Court's jurisdiction, whereas Rule 12(b)(6) permits a party to challenge the sufficiency of

the Complaint.  "[I]n passing on a motion to dismiss, whether on the ground of lack of

jurisdiction over the subject matter or for failure to state a cause of action, the allegations

of the complaint should be construed favorably to the pleader."  *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974); *see Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir.

1979) (on a motion to dismiss, courts must "accept the truth of the well-pleaded factual

allegations of the complaint").  Although the plaintiff must be given every favorable

inference that may be drawn from the factual allegations, the Court need not accept as

true "a legal conclusion couched as a factual allegation," or inferences that are entirely

---

[4] Defendants also move to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(5), but this Court, for
the reasons discussed herein, leaves those determinations for another day.

4

unsupported by the facts pled in the complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d
178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## I.     Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction. *See Gen. Motors Corp. v. EPA*,
363 F.3d 442, 448 (D.C. Cir. 2004).   The law presumes that "a cause lies outside [the
Court's] limited jurisdiction" unless a plaintiff establishes otherwise. *Kokkonen v.
Guardian Life Ins. Co. of Am.*, 511 U.S 375, 377 (1994).   When a defendant files
a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears
the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 561 (1992).   Because "subject-matter jurisdiction is
an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer
subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339
F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites
de Guinee*, 456 U.S. 694, 702 (1982)).   Given, moreover, that subject matter jurisdiction
cannot be waived, a court is "obliged to address it sua sponte" when the parties have
failed to do so. *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir.
1996).   In considering a motion to dismiss for lack of subject-matter jurisdiction
under Rule 12(b)(1), the Court is not confined to the letter of the complaint and may
"consider such materials outside the pleadings as it deems appropriate to resolve the
question [of] whether it has jurisdiction to hear the case." *Scolaro v. District of
Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C.
2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement'" and indeed "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation and internal quotation marks omitted). Thus, to suffice, a complaint must offer in support of its allegations more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In all events, if the facts alleged fail to establish a claim upon which relief can be granted, Rule 12(b)(6) mandates dismissal. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## DISCUSSION

## I.     Count III: Civil Rights Claim

Count III of plaintiff's Complaint alleges that he was "oppressed and denied civil rights [and]. . . privileges secured" by 18 U.S.C. §§ 241, 242, 1001, and 4001(a). Compl. ¶¶ 69-70. Unfortunately for plaintiff, however, none of these provisions confer a private right of action. *See, e.g., Abou-Hussein v. Gates*, 2010 WL 2574084, at *1 (D.C. Cir.

June 11, 2010) (per curiam) (affirming dismissal of claims under 18 U.S.C. §§ 241 and 1001, which "are criminal statutes that do not expressly create a private right of action"); *Keyter v. Bush*, No. 04–5324, 2005 WL 375623, at *1 (D.C. Cir. Feb. 16, 2005) (per curiam) (affirming dismissal of claims brought "pursuant to 18 U.S.C. §§ 4, 241, and 242, because, as criminal statutes, these statutes do not convey a private right of action"), *cert. denied*, 546 U.S. 875 (2005); *Owens v. Haas*, 601 F.2d 1242, 1247-48 (2d Cir. 1979) ("While prisoners themselves benefit from the scheme of the federal statutes dealing with prisons, there is insufficient support for a finding that the Statutes [and in particular 18 U.S.C. §§ 4001 and 4002] were enacted Especially for the benefit of prisoners." ); *Faraldo v. Kessler*, No. 08–CV–261, 2008 WL 216608, *6 (E.D.N.Y. Jan. 23, 2008) (collecting cases holding that there is no private right of action under 18 U.S.C. § 1001).  Accordingly, Count III of plaintiff's Complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    Count IV: Supremacy Clause Claim[5]

Plaintiff's claim under the Supremacy Clause of the Constitution (Count IV) fares no better.  Plaintiff avers that he was "denied supremacy clause rights under Article 6, Clause 2 to the Constitution." Compl. ¶¶ 71-72.  I disagree.  The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI,

---

[5] Defendants argue strenuously that plaintiff's Supremacy Clause Claim should be dismissed for failure to exhaust administrative remedies, notwithstanding plaintiff's argument that he did indeed exhaust his remedies before commencing the instant litigation.  The Court assumes, without deciding, that plaintiff is correct, and will progress to defendants' argument that plaintiff has not stated any claim under the Supremacy Clause for which relief may be granted.

cl. 2. The Supremacy Clause is, by definition, only implicated when state and federal laws are in direct conflict. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989) (stating that the Supremacy Clause "is not a source of any federal rights; it secure[s]s federal rights by according them priority whenever they come in conflict with state law") (citation and internal quotation marks omitted); *see also PLVIA, Inc. v. Mensing*, 131 S. Ct. 2567, 2577 (2011) (noting that the Supremacy Clause prioritizes federal law only when it directly clashes with state law). As such, cases that do not involve state law simply do not implicate the Supremacy Clause. *See, e.g., Henry v. Homecomings Fin.*, 376 F. App'x 777, 777 (9th Cir. 2010) (affirming dismissal of Supremacy Clause claim where plaintiffs "failed to allege that any defendant's role in instituting foreclosure proceedings or auctioning their home at a public sale was pursuant to a state law which conflicted with federal law"); *Peruta v. City of Hartford*, No. 3:09–cv–1946, 2012 WL 3656366, at \*12 (D. Conn. Aug. 24, 2012) (dismissing claim under 42 U.S.C. § 1983 for a violation of the Supremacy Clause because plaintiff "has not identified a conflict between federal and state law, which is required for a valid Supremacy Clause claim").

Plaintiff here alleges no accurate facts demonstrating that a state law was ever applied to him. Plaintiff asserts, as a basis of his Supremacy Clause challenge, that the SIU used state law to classify him as a BGF member. *See* Compl. ¶ 32-33. Not so. The SIU was not, as an initial matter, responsible for classifying plaintiff as a BGF member. Instead, the BOP, which is a federal entity, was responsible for plaintiff's reclassification. *See* Defs.' Mem. at 15. Even if plaintiff was correct that the SIU had officially classified

8

him as part of the BGF—which is plainly not the case—plaintiff's claim would still fail because the SIU is a federal entity governed by federal law. *See* Defs.' Mot. at 15. As such, the Court does not see how *any* state laws were involved in the investigation of plaintiff's alleged gang affiliations. In the absence of any remediable conflict between state and federal law, Count IV of plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

### III. Count II: Privacy Act Claim

The Court next takes up the cudgel of plaintiff's Privacy Act claim. In his Complaint, plaintiff alleges that because the BOP submitted false records to the SIU, all defendants "subjected [him] to intentional or willful flagrant disregard of right in violation of the Privacy Act of 1974." Compl. ¶ 67.

The Privacy Act requires federal agencies to maintain records used in making determinations "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [about the individual] . . . ." 5 U.S.C. § 552a(e)(5). The Act further allows individuals to access agency records about themselves and to request the amendment of records "they believe to be inaccurate, irrelevant, untimely, or incomplete." *Doe v. Fed. Bureau of Investigation*, 936 F.2d 1346, 1350 (D.C. Cir. 1991) (citing 5 U.S.C. § 552a(d)(1) & (2)). Defendants seek dismissal of plaintiff's Privacy Act claim on the grounds that: (1) the Privacy Act does not provide a cause of action against individual government employees; (2) the claim is time-barred; and (3) the information at issue is exempt from the Privacy Act. *See generally* Defs.' Mem.

9

As defendants correctly posit, the Privacy Act does not create a cause of action against the individual employees named in the Complaint. *See* Defs.' Mem. at 9. By its own terms, the Privacy Act only permits civil actions against an *agency* of the federal government, and excludes from its ambit actions against individual agency employees. *See* 5 U.S.C. § 552a(g)(1) (permitting an individual to bring a civil action against the "agency" that violates his rights); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 n.4 (D.C. Cir. 2015) (affirming the district court's *sua sponte* dismissal of Privacy Act claims against Homeland Security officials "as the Privacy Act creates a cause of action against only federal government agencies and not [against] . . . individual officials"); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming dismissal of "the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the Privacy Act"). For that reason, the Court finds that the only proper defendant to plaintiff's Privacy Act claims is the BOP and will, accordingly, dismiss the individual defendants from Count II of the Complaint.

The Court next considers defendants' argument that the remaining Privacy Act claim against the BOP is barred by the applicable statute of limitations. *See* Defs.' Mem. at 13. It is not. The Privacy Act authorizes a lawsuit brought within two years from the date on which the cause of action arises. 5 U.S.C. § 552a(g)(5). A cause of action arises on the date a plaintiff knew or had reason to know of the alleged Privacy Act violation. *Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 62 (D.D.C. 2009). Defendants argue that plaintiff was on notice of his claims as early as 2009, when he received a report discussing his involvement in a prison riot. Defs.' Mem. at 13-14. Not quite. The report

10

defendants rely on merely documents plaintiff's participation in a riot involving "a large number of inmates from two separate gangs." *See* Defs.' Mem. at 3-4. It does *not* confirm plaintiff's membership in the BGF and thus does not provide the information of that plaintiff now alleges to be false. *See id.* It was not until three years later, in 2012, that the BOP confirmed plaintiff's BGF membership. *See* Defs.' Mem. at 4. The logical conclusion, then, is that the *earliest* plaintiff would have been on notice of his Privacy Act claim is the year in which the BOP "confirmed" his purported membership in the BGF: 2012. Plaintiff, once apprised of the BOP's findings, timely commenced this action in 2014, well within the 2 year limitations period.

The inquiry does not end there. Although plaintiff's claim against the BOP is timely, it rests, nonetheless, on shaky ground. As defendants correctly point out, the Privacy Act exempts from its accuracy requirements certain record systems maintained by the BOP. *See* 5 U.S.C. § 552a(j)(2). Among these exempt records are documents housed within the BOP's Inmate Central Records System. 28 C.F.R. § 16.97(j); *Martinez*, 444 F.3d at 624 ("The BOP has exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act."); *see Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 162 (D.D.D. 2010) (dismissing a Privacy Act claim against the BOP because the information at issue was "maintained in the [exempted] Inmate Central Records System . . . ."). The Inmate Central Records System includes, among other things, "[c]ustody classification forms, correspondence from other agencies, internal investigations, disciplinary reports[,] and progress reports." *Allmon v. Fed. Bureau of Prisons*, 605 F. Supp. 2d 1, 6 (D.D.C. 2009).

11

Seizing, apparently, on this broad description of the Inmate Central Records

System, defendants summarily argue that "[p]laintiff's Privacy Act claims must fail

because all claims relate to exempted records." *See* Defs.' Mem. at 14. They posit that

"Plaintiff's disciplinary report history . . . records relating to Plaintiff's classification as a

BGF member . . . and records relating to BOP correspondence with SIU" are "part of the

exempted Inmate Central Records System." Defs.' Mem. at 14-15. Generalities alone

cannot suffice. It would certainly stand to reason that documents relating to the BOP's

investigation of inmate Bailey are housed within the Inmate Central Records System.

But that is by no means a foregone conclusion. Not only have defendants failed to

produce two of the key documents that they relied upon to reclassify plaintiff, but they

offer no sworn affidavits or declarations whatsoever averring where *exactly* these

documents are housed, making it impossible for this Court to determine whether the

documents are in fact Privacy Act-exempt. The Court simply will not opine on the merits

of a Privacy Act exemption in a vacuum. For that reason, the Court will defer ruling on

the Privacy Act claim as it pertains to the BOP until it has had a chance to review, *in*

*camera*, Attachments 5 and 8 to the Schwinn Declaration. The Court further directs

defendants to submit a declaration stating where these Attachments come from and

clarifying whether they are maintained in plaintiff's file within the Inmate Central

Records System.

**IV.    Count I: First Amendment Retaliation Claim**

This leaves only plaintiff's claim for retaliation in violation of the First

Amendment. Compl. ¶¶ 65-66. Defendants raise numerous objections to this claim,

specifically, failure to exhaust administrative remedies, lack of personal jurisdiction, and failure to state a claim on which relief may be granted. *See generally* Defs.' Mem. Defendants also request, in the alternative, that this Court transfer the case to a Court of proper jurisdiction. *Id.* The Court will refrain from delving into those issues until it has had the opportunity to adjudicate defendants' motion to dismiss plaintiff's Privacy Act Claim against the BOP. Accordingly, the Court will defer ruling on Count I of plaintiff's Complaint at this time.

## CONCLUSION

For all of the foregoing reasons, the Court will DENY plaintiff's request for discovery, will GRANT defendant's Motion to Dismiss as to Counts III and IV, and GRANT in PART defendant's Motion to Dismiss Count II as it pertains to the Privacy Act claims against the individual defendants. The Court reserves judgment on Count II as it pertains to the Privacy Act claims against defendant Bureau of Prisons, and on Count I as it relates to all defendants. Finally, the Court ORDERS that defendants submit, by no later than October 30, 2015, Attachments 5 and 8 to the Schwinn Declaration for *in camera* review as well as a declaration stating where these attachments come from and clarifying whether they are maintained in the BOP's Inmate Central Records System. An Order accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

13